**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

-------------------------------------------------------

MATTHEW RITTER, *individually and* :
*on behalf of all others similarly-situated* :     CIVIL ACTION NO.: 20-01343-EGS
                                              :
                                              :     **JURY TRIAL DEMANDED**
                      Plaintiff,              :
                                              :
          v.                                  :
                                              :
GREASE STOP, LLC, *et al.*                    :
                                              :
                      Defendants.             :

-------------------------------------------------------

## FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Matthew Ritter ("Plaintiff") hereby brings this First Amended Collective and

Class Action Complaint against Defendant Grease Stop, LLC ("Grease Stop") and Defendant

Greg Fisher ("Fisher") (collectively, "Defendants"), and alleges, upon personal belief as to his

own acts, and upon information and belief as to the acts of others, as follows:

### NATURE OF THE ACTION

1.      Plaintiff bring this complaint contending that Defendants have unlawfully failed

to pay him and other similarly-situated individuals employed in the position(s) of Grease Buster/

Technician and/or Lead Technician ("Class Plaintiffs"), overtime compensation pursuant to the

requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the

Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.100, *et seq.*

2.      Plaintiff further contends that Defendants have violated the FLSA by

discriminating against and ultimately terminated him in retaliation for initiating this collective

action lawsuit against Defendant through the filing of his initial complaint, which Plaintiff filed

on or around March 9, 2020.

3.     Plaintiff is a former employee of Defendants who was/is employed in the positions of Grease Buster/Technician and Lead Technician.  During the course of their employment, Plaintiff and Class Plaintiffs regularly worked more than forty (40) hours per week, but were not properly compensated for their work in that Plaintiff and Class Plaintiffs were not paid an overtime premium at 1.5 times their regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

4.     In relevant part, Plaintiff contends that Defendants maintained an unlawful policy and practice of automatically deducting thirty (30) minutes of time for an "unpaid meal break" each shift, despite the fact that Plaintiff and Class Plaintiffs rarely, if ever, actually received a full, uninterrupted break, resulting in the non-payment of overtime compensation in violation of the FLSA and PMWA.

5.     Plaintiff brings this action as a representative action under the FLSA and PMWA for monetary damages and penalties, to seek redress for Defendants' willful, unlawful, and improper conduct.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides, in relevant part, that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."  See 29 U.S.C. § 216(b).

7.     This Court also has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8.     This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as Plaintiff's FLSA claims.

9.    The venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as the parties

reside in this judicial district, doing business therein, and the unlawful practices of which

Plaintiff are complaining were committed in the Commonwealth of Pennsylvania.

## PARTIES

10.    Plaintiff Matthew Ritter currently resides at 1910 Schubert Road, Lot 18, Bethel,

PA 19507.

11.    Upon information and belief, Defendant Grease Stop, LLC, is a limited liability

company organized and existing under the laws of the Commonwealth of Pennsylvania, with an

office address registered with the Pennsylvania Secretary of State of 270 Friedensburg Road,

Reading, PA 19606, and a principal place of business at 4462 Boyertown Pike, Reading, PA

19606.

12.    Upon information and belief, Defendant Fisher is founder, owner, chief executive

officer, and managing member of Defendant Grease Stop, LLC.  Upon information and belief,

Defendant Fisher maintains, and/or at all times relevant to the allegations contained herein,

maintained operational control over Grease Stop, exercising control, both directly and indirectly,

over the terms and conditions of employment, work schedules, payroll, and compliance with

federal and state wage and hour laws, of the employees of Defendant Grease Stop, LLC,

including, but not limited to, Plaintiff and Class Plaintiffs.

13.    Upon information and belief, Defendant Fisher was an "employer" of Plaintiff for

purposes of the FLSA and PMWA because he had operational control over significant aspects of

Defendant Grease Stop, LLC's day-to-day functions, such as workplace conditions, personnel

status changes, and compensation, during the time period giving rise to this action, was

ultimately responsible for ensuring Defendant Grease Stop, LLC's compliance with the FLSA

and PMWA, and was directly involved with the decision-making process with respect to Plaintiff's and Class Plaintiff's hiring and compensation.

14.     Upon information and belief, Defendants operate throughout the Commonwealth of Pennsylvania, including this judicial district.

15.     Defendants are "private employers" and covered by the FLSA.

16.     During the course of their employment with Defendants, Plaintiff and Class Plaintiffs are/were engaged in commerce within the meaning of the FLSA in that they performed work involving goods purchased and/or ordered from locations outside of Pennsylvania.

17.     Upon information and belief, Defendants are covered employers under the FLSA in that, during the past three (3) years, they had an annual dollar volume of sales or business done of at least $500,000, and had employees engaged in commerce within the meaning of the FLSA.

18.     Plaintiff and, upon information and belief, Class Plaintiffs were employees who was employed by Defendants during all times relevant hereto and, as such, are employees entitled to the FLSA's protections.  See 29 U.S.C. § 203(e).

19.     At all times relevant hereto, Defendants acted or failed to act through their agents, servants, and/or employees thereto existing, each of whom acted at all times relevant hereto in the course and scope of their employment with and for Defendants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

20.     Paragraphs 1 through 19 are hereby incorporated by reference as though the same were fully set forth at length herein.

21.     This action is brought as a collective action to recover unpaid compensation and overtime compensation, liquidated damages, unlawfully withheld wages, statutory penalties, and damages owed to Plaintiff and all similarly situated current and former employees of Defendants.

22.     Pursuant to 29 U.S.C. § 216(b) of the FLSA, Plaintiff brings this action individually and on behalf of all other similarly situated persons presently or formerly employed by Defendants in the position of Grease Buster/Technician and/or Lead Technician, or in other hourly positions with similar job duties, who worked for Defendants at any point in the past three (3) years, and were subject to Defendants' meal break deduction policy ("Class Plaintiffs").

23.     Plaintiff estimates that there are in excess of thirty (30) other similarly situated Grease Busters/Technicians and/or Lead Technicians who either are working or worked for Defendants and were unlawfully denied overtime compensation at 1.5 times their "regular rate" of pay for hours worked in excess of forty (40) in a workweek as a result of the unlawful practices described above.  The precise number of employees can easily be ascertained by Defendants.  These employees can be identified and located using Defendants' payroll and personnel records.  Class Plaintiffs may be informed of the pendency of this Collective Action by direct mail and/or publication.

24.     Pursuant to 29 U.S.C. § 216(b), this action is properly maintained as a collective action because Plaintiff and the Class Plaintiffs are similarly-situated.  Plaintiff and Class Plaintiffs were similarly denied overtime compensation at their regular rate of pay as a result of Defendants' unlawful pay practices, had the same or similar job classifications and job duties, and were subject to the same uniform policies, business practices, payroll practices, and operating procedures.  Further, Defendants' willful policies and practices, which are discussed more fully in this Collective and Class Action Complaint, whereby Defendants have failed to pay

Class Plaintiffs an overtime premium based on 1.5 times their "regular rate" for all hours worked over forty (40) hours in a workweek, have impacted Class Plaintiffs in the same fashion.

25.     Plaintiff will request the Court to authorize notice to all current and former similarly-situated employees employed by Defendants, informing them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid compensation, overtime compensation, and liquidated damages under the FLSA.

## CLASS ACTION ALLEGATIONS

26.     Paragraphs 1 through 25 are hereby incorporated by reference as though the same were fully set forth at length herein.

27.     Plaintiff brings this action individually, and on behalf of the following state-wide class of similarly situated individuals, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons presently or formerly employed by Defendants in the Commonwealth of Pennsylvania at any point during the past three (3) years in the position(s) of Grease Buster/Technician and/or Lead Tech, or in hourly positions with similar job duties, who were subject to Defendants' meal break deduction policy.

28.     The members of the class are so numerous that joinder of all members is impractical. Class members may be informed of the pendency of this Class Action by direct mail.

29.     Pursuant to Federal Rule of Civil Procedure 23(a)(2), there are question of law and fact common to the Class, including, but not limited to:

A.     Whether Plaintiff and the Class are entitled to overtime compensation for services rendered in excess of forty (40) hours per week under the PMWA;

B.     Whether Defendants failed to accurately track and maintain records of the hours worked by Plaintiff and the Class;

6

C.      Whether Defendants were aware that Plaintiff and the Class were working through and/or not receiving uninterrupted meal breaks;

D.      Whether Defendants implemented and/or maintained an effective mechanism for Plaintiff and the Class to report and request payment for missed meal breaks;

E.      Whether Plaintiff and the Class worked in excess of forty (40) hours per week; and

F.      Whether Plaintiff and the Class have suffered and are entitled to damages, and if so, in what amount.

30.      Plaintiff's claims are typical of the claims of the Class members.  Plaintiff is a former employee of Defendants who was employed in both the positions of Grease Buster/Technician and Lead Technician, and suffered similar injuries as those suffered by the Class members as a result of Defendants' failure to properly pay overtime compensation. Defendants' conduct of violating the PMWA has affected Plaintiff and the Class in the same way.

31.      Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is similarly situated to the Class and has no conflict with the Class members.

32.      Plaintiff is committed to pursuing this action and has retained competent counsel experienced in class action litigation.

33.      Pursuant to Rules 23(b)(1), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, this action is properly maintained as a class action because:

A.      The prosecution of separate actions by or against individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants;

B.      Defendants, by failing to pay wages and overtime compensation when they became due and owing in violation of the PMWA, have acted or refused to act on grounds generally applicable to the Class, thereby making equitable relief appropriate with respect to the Class as a whole; and

C.      The common questions of law and fact set forth above applicable to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this case, especially with respect to considerations of consistency, economy, efficiency, fairness and equity, as compared to other available methods for the fair and efficient adjudication of the controversy.

34.     A class action is also superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impractical.  Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.  Additionally, as the damages suffered by each Class member may be relatively small, the expenses and burden of individual litigation would make it difficult for the Class members to bring individual claims. The presentation of separate actions by individual Class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of each member of the Class to protect his or her interests.

**FACTUAL ALLEGATIONS RELATED TO
PLAINTIFF'S AND CLASS PLAINTIFFS' CLAIMS TO UNPAID OVERTIME**

35.     Paragraphs 1 through 34 are hereby incorporated by reference as though the same were fully set forth at length herein.

8

36.     Plaintiff Matthew Ritter first began his employment with Defendants in or around July 2016, when he was hired a Grease Buster/Technician.

37.     Within approximately six (6) months, Plaintiff was promoted to the position of Lead Technician.

38.     Plaintiff was paid on an hourly basis in both positions.

39.     Upon information and belief, all of Defendants' Grease Busters/Technicians are, and were at all times during the past three (3) years, paid on an hourly basis.

40.     Upon information and belief, all of Defendants' Lead Technicians are, and were at all times during the past three (3) years, paid on an hourly basis.

41.     Plaintiff and, upon information and belief, all Grease Busters/Technicians and Lead Technicians are classified by Defendants as "non-exempt" under the FLSA/PMWA.

42.     As Grease Busters/Technicians and Lead Technicians, Plaintiff's and Class Plaintiff's primary job duty was the performance of manual degreasing and cleaning services for Defendants' commercial clients in the restaurant industry.

43.     In that capacity, Plaintiff and Class Plaintiffs were required to meet at Defendants' office location in Reading, PA, where they would load up company vans with degreasing equipment and cleaning supplies.

44.     Plaintiff and Class Plaintiffs would then drive and/or be driven to various client locations assigned and scheduled by Defendants, based on a timetable determined by Defendants, where they would perform a variety of manual services (such as kitchen exhaust cleaning, cook line cleaning, concrete and roof cleaning, and grease containment services).

45.     At the conclusion of the workday, Plaintiff and Class Plaintiffs were required to drive and/or be driven back to Defendants' office location in Reading, PA, where they would unload the company vans and drop off any necessary paperwork.

46.     Plaintiff and, upon information and belief, Class Plaintiffs, exclusively drove minivans, vans, and/or high-top vans weighing less than 10,000 pounds.

47.     Plaintiff and, upon information and belief, Class Plaintiffs were typically scheduled to work five (5) or more days per week, working approximately ten (10) or more hours per day.

48.     In this regard, Plaintiff typically worked at least fifty (50) hours per week.

49.     Upon information and belief, Class Plaintiffs frequently worked at least fifty (50) hours per week.

50.     Upon information and belief, Defendants maintained a policy and practice of automatically deducting thirty (30) minutes from Plaintiff's and Class Plaintiffs' pay for an "unpaid meal break" for each working day.

51.     However, Plaintiff and, upon information and belief, Class Plaintiffs rarely, if ever, received these meal breaks, largely as a result of Defendants' failure to allocate time during their busy cleaning schedule to receive a full, uninterrupted break during which they were completely relieved from duty as required by the FLSA/PMWA.  See 29 C.F.R. § 785.19.

52.     Defendants' management were aware that Plaintiff and Class Plaintiffs were not receiving their meal breaks, but failed to take any action to ensure that they received their breaks or were compensated for breaks not received.

53.    For example, on several occasions, Plaintiff complained to Defendants' General Manager, Eddie Nickisher ("Mr. Nickisher"), about the fact that he and Class Plaintiffs were not receiving meal breaks, despite being deducted pay.

54.    However, Mr. Nickisher would merely respond, "Get the job done. You can't take a break."

55.    Defendants did not implement or maintain any mechanism, such as a meal break exception form, for Plaintiff and/or Class Plaintiffs to report and request payment for missed meal breaks.

56.    Indeed, it was not until late February/early March 2020 when Defendants, faced with strong pressure from Plaintiff and Class Plaintiffs, first created a form purporting to require Plaintiff and Class Plaintiffs to notify the company "within 24 hours" of a missed meal break, while informing Plaintiff and Class Plaintiffs that "if a break is taken but reported as not taken," it would be "considered a theft."

57.    Nevertheless, despite now placing the burden on Plaintiff and Class Plaintiffs to notify Defendants of each missed meal break, Defendants have taken no steps to ensure that Plaintiff and Class Plaintiffs actually receive their meal breaks, such as adjusting their appointment schedule, providing specific break times, or permitting Plaintiff and Class Plaintiffs to electronically report the non-receipt of a break when they clock out.

58.    As a result of Defendants' unlawful meal break deduction policy, Plaintiff and, upon information and belief, Class Plaintiffs were and are regularly deducted two and a half (2.5) to three (3) hours of pay per week, depending on whether they worked a five (5) or six (6) day week.

59.     Moreover, because Plaintiff and, upon information and belief, were scheduled to work in excess of forty (40) hours per week, as stated above, Defendants' unlawful meal break deduction policy resulted in Plaintiff and Class Plaintiffs being denied overtime compensation for these two and a half (2.5) to three (3) hours of pay per week.

60.     By way of example, during the workweek of February 9, 2020 to February 15, 2020, Plaintiff worked at least fifty-four (54) hours and twelve (12) minutes, but was only paid fifty-one (51) hours and forty-two (42) minutes due to Defendants' automatic deduction of two (2) hours and thirty (30) minutes of pay for meal breaks he did not receive.

61.     As a result, Plaintiff was denied two and a half (2.5) hours of overtime compensation during said workweek.

62.     Defendants failed to track and maintain accurate records of the regular and overtime hours worked by Plaintiff and, upon information and belief, Class Plaintiffs, per day and per week as required by the FLSA.  See 29 C.F.R. § 516.2.

63.     Defendants were aware that Plaintiff and, upon information and belief, Class Plaintiffs were working significant overtime hours without properly receiving overtime compensation as aforesaid, as a result of missed meal breaks in violation of the FLSA and PMWA.

64.     Plaintiff and Class Plaintiffs were paid on an hourly basis, and thus do not/did not qualify for the exemptions for executive, administrative, or professional employees under the FLSA/PMWA.

65.     Plaintiff and Class Plaintiffs did not/do not have the authority to hire, fire, or discipline other employees of Defendants, nor did/do they make recommendations with respect to employee status changes to which Defendants gives substantial weight.

66.     As a result, Plaintiff and Class Plaintiffs do not satisfy the duties requirements for the exemption for executive employees under the FLSA/PMWA.

67.     Plaintiff and Class Plaintiffs did not/do not perform work directly related to Defendants' management or general business operations, nor did/do they exercise discretion or independent judgment regarding matters of significance to Defendants.

68.     Accordingly, Plaintiff and Class Plaintiffs do not meet the duties requirements for the exemption for administrative employees under the FLSA/PMWA.

69.     Plaintiff's and Class Plaintiffs' primary duty did not/does not include the performance of work predominately intellectual in nature requiring advanced knowledge in a field of science or learning acquiring through a prolonged course of intellectual instruction.  In this regard, Plaintiff's and Class Plaintiffs' job duties did not/does not require the consistent exercise of discretion and judgment, as distinguished from the performance of routine mental, manual, and mechanical work.

70.     Accordingly, Plaintiff and Class Plaintiffs do not meet the duties requirements for the exemption for learned professionals under the FLSA/PMWA.

71.     As stated above, Plaintiff and, upon information and belief, Class Plaintiffs exclusively drove non-commercial vehicles (i.e. vehicles weighing less than 10,000 pounds).

72.     As a result, even if Defendants met the definition of a motor carrier, which Plaintiff denies, Plaintiff and Class Plaintiffs would nevertheless qualify for the Small Vehicle Exception to the Motor Carrier Exemption under the FLSA/PMWA.

73.     Finally, there are no other exemptions under the FLSA and/or PMWA which could arguably be applicable to Plaintiff or Class Plaintiffs.

74.    Plaintiff and Class Plaintiffs are/were, within the meaning of the FLSA and PMWA, non-exempt employees of Defendants and therefore entitled to overtime compensation for all hours they worked over forty (40) in a workweek.

75.    As a result of Defendants' aforesaid illegal actions, Plaintiff and Class Plaintiffs have suffered damages.

## FACTUAL ALLEGATIONS RELATED TO
## PLAINTIFF'S RETALIATION CLAIM UNDER THE FLSA

76.    Paragraphs 1 through 75 are hereby incorporated by as though the same were fully set forth at length herein.

77.    On or around March 9, 2020, Plaintiff initiated this action by filing a collective (and class) action complaint ("Initial Complaint") against Defendants under the FLSA (and PMWA).

78.    On March 11, 2020 and again on March 12, 2020, Plaintiff was forced to call off from work due to pressing family matters and did so in accordance with Defendants' policies and procedures.

79.    On March 13, 2020, Plaintiff's wife, Sarah Ritter ("Mrs. Ritter"), called Respondent's Assistant Administrator, Beth Staskiewicz ("Ms. Staskiewicz"), to inform Defendants that Plaintiff had been placed in jail on hold for a potential parole violation and was supposed to have a preliminary hearing in 7-10 days.

80.    Mrs. Ritter asked Ms. Staskiewicz to inform Mr. Nickisher about the same and that Plaintiff would be unable to come in to work as a result.

81.    Upon information and belief, Ms. Staskiewicz passed this information on to Mr. Nickisher, and Mr. Nickisher accordingly took Plaintiff off the schedule.

82.     A day or so later, Mr. Nickisher contacted Mrs. Ritter to ask about Plaintiff's status, to which Mrs. Ritter responded that she did not yet have any new information about when he was getting out.

83.     Throughout the course of Plaintiff's employment, Defendants have generally adopted a lenient approach towards employees with criminal backgrounds and/or legal issues, including reinstating employees after a period of incarceration and/or holding their position(s) open and restoring them to the schedule following time in jail.

84.     Accordingly, Defendants did not consider Plaintiff's need for time off due to his family matters or alleged parole violation as an issue worthy of discipline, let alone termination, and were prepared to restore him to the schedule upon his return from jail.

85.     However, upon information and belief, Defendants' position in this regard changed once it received notice of the instant lawsuit.

86.     For example, upon information and belief, Defendants' management, including, but not limited to Mr. Nickisher responded to news of the lawsuit by referring to Plaintiff as a "piece of shit" and stating that Plaintiff would never work for Grease Stop again.

87.     When Plaintiff was released from jail on March 27, 2020, Mrs. Ritter promptly contacted Ms. Staskiewicz to let her know Plaintiff had been released.

88.     Upon information and belief, Ms. Staskiewicz notified Mr. Nickisher that Plaintiff had been released and was available for work.

89.     On March 28, 2020, Plaintiff reached out to Mr. Nickisher to tell him he had been released and was able to work.

90.     Upon information and belief, Mr. Nickisher ignored Plaintiff's attempts to communicate with him.

91.     Upon information and belief, Mr. Fisher directed Defendants' staff not to communicate with Plaintiff or his wife as a result of the instant lawsuit.

92.     Plaintiff followed up with Mr. Nickisher on March 30, 2020, explaining via text message that he was out and able to work again.

93.     Mr. Nickisher did not respond to Plaintiff's text message for over seven (7) hours, asking Plaintiff to call him back to discuss the schedule.

94.     Plaintiff did not see this text message until the following morning, at which point he responded that he could stop by Defendant's location to pick up his schedule.

95.     Mr. Nickisher responded by asking Plaintiff to give him a call to discuss.

96.     When Plaintiff called Mr. Nickisher to get his schedule, Mr. Nickisher told him that no one from Grease Stop would be talking to him because they were angry about the lawsuit Plaintiff filed against them.

97.     Mr. Nickisher then told Plaintiff to have his lawyer contact Defendants' lawyer.

98.     When Plaintiff asked, "Even to go back to work?" Mr. Nickisher said, "Yes," and hung up the phone.

99.     Upon information and belief, after Defendants received notice of this lawsuit, they, including, but not limited to Mr. Nickisher, began contacting Defendants' current and former employees and spreading misinformation about the lawsuit and Plaintiff's actions during his employment in an effort to discourage participation in this lawsuit.

100.    Indeed, on April 3, 2020, Defendant Fisher posted a notice to all employees regarding this lawsuit, referring to Mr. Ritter as "a former employee" and asserting that Mr. Ritter was falsely claiming that "he was deducted meal breaks, despite receiving full breaks, while he was employed with our company."

101.    On April 3, 2020, Plaintiff learned that his employment had been terminated, first allegedly for "job abandonment" and, later, due to alleged "timekeeping fraud" and "insubordination," each of which Plaintiff strongly denies.

102.    Plaintiff engaged in protected activity under the FLSA by filing the Initial Complaint and encouraging at least one (1) of his coworkers to file an Opt-In Consent Form joining the lawsuit prior to his termination on April 3, 2020.

103.    It is believed and therefore averred that Defendants' stated reason(s) for Plaintiff's termination were merely a pretext for terminating Plaintiff in retaliation for initiating this action and encouraging participation therein in violation of 29 U.S.C. § 215(a)(3).

104.    It is further believed and therefore averred that Defendants terminated Plaintiff's employment in order to discourage other employees from participating in this lawsuit and/or pursuing their own claims against Defendants for unpaid overtime compensation.

105.    As a result of Defendants' deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, earnings and earnings potential, loss of potential bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to his reputation.

### COUNT I
### FAIR LABOR STANDARDS ACT
### 29 U.S.C § 201, *et seq.*
### FAILURE TO PAY OVERTIME COMPENSATION

106.    Paragraphs 1 through 105 are hereby incorporated by reference as though the same were full set forth at length herein.

107.    Pursuant to Section 206(b) of the FLSA, employees must be compensated for every hour worked in a workweek.

108.    Moreover, under Section 207(a)(1) of the FLSA, employees must be paid overtime equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week.

109.    Defendants failed to accurately track and maintain records of all hours worked by Plaintiff and Class Plaintiffs.

110.    Upon information and beliefs, Plaintiff and Class Plaintiffs were regularly forced to work through their thirty (30) minute break periods without pay with the actual and constructive knowledge of Defendants.

111.    As a result, Plaintiff and, upon information and belief, Class Plaintiffs were regularly denied two and a half (2.5) to three (3) hours of overtime compensation per week, depending on whether they worked five (5) or six (6) days per week.

112.    Defendants failed to pay Plaintiff and Class Plaintiffs overtime compensation for all hours worked over forty (40) in a workweek at 1.5 times their regular rate of pay.

113.    The foregoing actions of Defendants and the policies and practices of Defendants violate the FLSA.

114.    Defendants' actions were willful, not in good faith, and in reckless disregard of clearly applicable FLSA provisions.

115.    Defendants are liable to Plaintiff and Class Plaintiffs for actual damages, liquidated damages, and other equitable relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses.

**WHEREFORE,** Plaintiff prays for the following relief on behalf of himself and Class Plaintiffs;

A.    An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B.    An Order from the Court ordering Defendants to file with this Court and furnish to the undersigned counsel a list of all names and addresses of all persons presently or formerly employed by Defendants in the positions of Grease Buster/Technician and/or Lead Technician, or in hourly positions with substantially similar job duties, who worked for Defendants at any point in the past three (3) years, and were subject to Defendants' meal break deduction policy, and authorizing Plaintiff's counsel to issue a notice at the earliest possible time to these individuals, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked for Defendants during the liability period, but were not paid overtime compensation at 1.5 times their regular rate of pay as required by the FLSA;

C.    Adjudicating and declaring that Defendants' conduct as set forth herein and above is in violation of the FLSA;

D.    Adjudicating and declaring that Defendants violated the FLSA by failing to pay overtime compensation to Plaintiff and Class Plaintiffs for work performed in excess of forty (40) hours per week during unpaid meal breaks;

E.    Awarding Plaintiff and Class Plaintiffs back pay wages and/or overtime wages in an amount consistent with the FLSA;

F.    Awarding Plaintiff and Class Plaintiffs liquidated damages in accordance with the FLSA;

G.    Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendants, in accordance with the FLSA;

H.    Awarding pre- and post-judgment interest and court costs as further allowed by law;

I.    Granting Plaintiff and the Class Plaintiffs leave to add additional Plaintiff by motion, the filing of written opt-in consent forms, or any other method approved by the Court; and

J.    For all additional general and equitable relief to which Plaintiff and the Class Plaintiffs may be entitled.

**COUNT II**
**PENNSYLVANIA MINIMUM WAGE ACT OF 1968**
**43 P.S. § 333, *et seq.***
**FAILURE TO PAY OVERTIME COMPENSATION**

116.    Paragraphs 1 through 115 are hereby incorporated by reference as though the same were fully set forth at length herein.

117.    The Pennsylvania Minimum Wage Act provides that employers must pay certain "minimum wages," including overtime wages, to its employees.  See 43 P.S. § 333.113.

118.    The Pennsylvania Minimum Wage Act further provides that "employees shall be paid for overtime not less than one and one half times the employee's regular rate" for hours worked in excess of forty (40) hours in a workweek.  See 43 P.S. § 333.113; see also 34 Pa. Code § 231.41.

119.    By their actions alleged above, Defendants have violated the provisions of the Pennsylvania Minimum Wage Act of 1968 by failing to properly pay overtime compensation and for failing to properly pay Plaintiff and Class Plaintiffs for all hours work.

120.    As a result of Defendants' unlawful acts, Plaintiff and Class Plaintiffs have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to

recovery of such amounts, together with interest, costs and attorney's fees pursuant to

Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.113.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class Plaintiffs, prays for

judgment against Defendants as follows:

A.     An Order certifying this case as a class action and designating Plaintiff as the

representative of the Class and his counsel as class counsel;

B.     An award to Plaintiff and Class Plaintiffs for the amount of unpaid overtime

compensation to which they are entitled, including interest thereon, and penalties subject to

proof;

C.     An award to Plaintiff and Class Plaintiffs of reasonable attorney's fees and costs

pursuant to the Pennsylvania Minimum Wage Act; and

D.     An award to Plaintiff and Class Plaintiffs for any other damages available to them

under applicable Pennsylvania law, and all such other relief as this Court may deem proper.

## COUNT III
## FAIR LABOR STANDARDS ACT
### 29 U.S.C § 215, *et seq.*
### RETALIATION

121.     Paragraphs 1 through 120 are hereby incorporated by reference as though the

same were fully set forth at length herein.

122.     Plaintiff engaged in protected activity under the FLSA by filing the Initial

Complaint against Defendants and encouraging his coworkers to participate therein.

123.     Shortly thereafter, Defendants began retaliating against Plaintiff in the manner

describe above, ultimately terminating Plaintiff's employment for reasons which are clearly

pretextual.

124.    By reason of the foregoing, Defendants, through their agents, officers, servants, and/or employees have violated the FLSA by discharging Plaintiff in retaliation for engaging in protected activity under the FLSA.

125.    As a result of Defendants' deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, promotion benefits, earnings, earnings potential, raises, other significant economic benefits, emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendants, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant him the maximum relief allowed by law, including, but not limited to:

A.    Back wages, front pay, and bonuses in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

B.    Monetary compensation for the amounts expended by Plaintiff on health insurance premiums;

C.    Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendants for their intentional, negligent, willful, wanton, and/or malicious conduct;

D.    Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this matter;

E.    Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth by applicable federal law.

F.    Pre-judgment interest in an appropriate amount;

G.      Such other and further relief as is just and equitable under the circumstances.


## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.


Respectfully submitted,

**MURPHY LAW GROUP, LLC**


By:      /s/ Michael Groh_____
Michael Murphy, Esquire
Michael Groh, Esquire
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-021
murphy@phillyemploymentlawyer.com
mgroh@phillyemploymentlawyer.com
Attorneys for Plaintiff

Dated:  May 26, 2020

## **DEMAND TO PRESERVE EVIDENCE**

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's and the Class/Collective Plaintiff's employment, to their potential claims and their claims to damages, to any defenses to same, including, but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spread sheets, images, cache memory, payroll records, paystubs, time records, time sheets and any other information and/or data which may be relevant to any claim or defense in this litigation.

## <u>CERTIFICATE OF SERVICE</u>

I, Michael Groh, Esq., hereby certify that on May 26, 2020, I caused a true and correct copy of the foregoing to be filed via ECF filing, which will send notification of such filing to the following counsel:

Kevin A. Moore, Esq.
Susanna Fultz, Esq.
Leisawitz Heller Abramowitch Phillips, P.C.
2755 Century Blvd.
Wyomissing, PA 19610
610-372-3500
610-372-8671 (fax)
kmoore@leisawitzheller.com
sfultz@leisawitzheller.com
Attorneys for Defendants

 /s/ Michael Groh
Michael Groh, Esq.

Dated: May 26, 2020